IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANE E. HUNDLEY, )
)
      Plaintiff, )
)
 -vs- ) Civil Action No. 16-153
)
CAROLYN W. COLVIN, )
COMMISSIONER OF SOCIAL SECURITY, )
)
      Defendant. )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Synopsis

Plaintiff Shane E. Hundley ("Hundley") appeals an ALJ's denial of his claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, §§ 1381-1383. Hundley filed his claim on May 9, 2012, alleging a disability beginning on February 1, 2011. (R. 14) He claims to be disabled due to, among other things, schizoaffective disorder, bipolar disorder, obsessive compulsive disorder ("OCD"), and anxiety disorder.[1] The application was denied and Hundley filed a timely request for a hearing. (R. 14) Following a hearing, during which a vocational expert testified, the ALJ denied Hundley's claim for benefits. Specifically, the ALJ concluded that Hundley had the residual functional capacity ("RFC") to perform a range of sedentary work with some limitations. (R. 18) Hundley appealed. Pending are Cross Motions for Summary

---

[1] Although Hundley initially also alleged physical impairments, he does not challenge the ALJ's finding that those impairments are not disabling. *See ECF Docket No.* [13], p. 2. As such, I will not discuss Hundley's physical limitations.

1

Judgment. *See ECF Docket Nos.* [12] and [14]. After careful consideration and for the reasons set forth below, this case is affirmed.

## Legal Analysis

1. <u>Standard of Review</u>

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

   2. The ALJ's Assessment of Medical Evidence under the Regulations

Hundley takes issue with the ALJ's assessment of the medical evidence. I note that a large portion of Hundley's Brief in Support of his Motion for Summary Judgment is devoted to recounting the evidence that supports his claim for disability. Hundley's efforts in this regard are unpersuasive. The:

> question is not whether substantial evidence supports Plaintiff's claims, or whether there is evidence that is inconsistent with the ALJ's finding. … Substantial evidence could support both Plaintiff's claims and the ALJ's finding because substantial evidence is less than a preponderance. *Jesurum v. Sec'y of U.S. Dep't. of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If substantial evidence supports the ALJ's finding, it does not matter if substantial evidence also supports Plaintiff's claims. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).

*Weidow v. Colvin*, Civ. No. 15-765, 2016 WL 5871164 at *18 (M.D. Pa. Oct. 7, 2016). The question before me is simply whether substantial evidence supports the ALJ's findings. Hundley challenges the ALJ's assessment of the opinions rendered by Dr. Rogers, his psychiatrist, Dr. Craig, who performed a consultative psychological examination, and Sue Burke, his treating therapist. According to Hundley, the ALJ failed to properly apply the factors set forth in 20 C.F.R. § 416.927(c) and § 404.1527(c) relating to the weighing of medical evidence.

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to that of a non-examining source. 20 C.F.R. § 404.1527(c) and § 416.927(c)(1). Additionally, the ALJ typically will give more weight to opinions from

3

treating physicians, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from the reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c) and § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id.* If a treating physician's opinion is not given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient / physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. 20 C.F.R. § 404.1527(c)(1)-(6) and § 416.927(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." 20 C.F.R. § 416.927(c)(4). In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(c)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Social Sec.*, 403 Fed. Appx. 679, 686 (3d Cir. 2010).

The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." *See* 20 C.F.R. § 404.1527(d)(1)(3) and § 416.927(d)(1), (3); *Dixon v. Comm'r. of Soc. Sec.*, 183 Fed. Appx. 248, 251-52 (3d Cir. 2006) (stating, "[o]pinions on disability are not medical opinions and are not given any special significance."). Although the ALJ may choose who to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r. of Soc. Sec.*, 529 F.3d 198, 203-4 (3d Cir. 2008). "It is not for this Court to reweigh the medical opinions in the record but rather to determine if there is substantial evidence to support the ALJ's weighing of those opinions." *Lilly v. Colvin*, Civ. No. 13-1561, 2016 WL 1166334 (D. Del. March 23, 2016), *citing, Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

Significantly, I note that while § 404.1527(c) and § 416.927(c) set forth the framework for the ALJ's assessment of medical evidence and indeed instruct an ALJ to consider factors such as examining relationship, treatment relationship, supportability,

consistency, and specialization, the regulations do not dictate how the ALJ should memorialize his or her decision. Indeed, my colleague has specifically rejected such an argument. *See Laverde v. Colvin*, Civ. No. 14-1242, 2015 WL 5559984 at *6, n. 3 (W.D. Pa. Sept. 21, 2015) (Diamond, D.J.) (rejecting the idea that § 404.1527(c) requires an ALJ to "explicitly list" and discuss "each of the six factors set forth" in the regulation, declining to impose such a requirement, and finding that the ALJ need only adequately explain her evaluation of the medical evidence in such a manner so as to allow the court "to conduct meaningful review" and satisfy the court that "she adhered to the standards of § 404.1527(c)…."). Thus, any argument by Hundley that the ALJ did not explicitly discuss each factor is unpersuasive.

Against this backdrop, I turn to the specific issues Hundley raises. He contends that the ALJ failed to "acknowledge or address" that Dr. Rogers and Dr. Craig are specialists in their fields, which is a factor to be given consideration under 20 C.F.R. § 404.1527(c)(5) and § 416.927(c)(5). *See ECF Docket No.* [13], p. 15. I disagree. The ALJ clearly acknowledged that Dr. Craig was a psychologist and that Dr. Craig actually examined Hundley. (R. 19) (stating that "[t]he claimant attended a *consultative psychological evaluation with Dr. Craig*….") (emphasis added). He recognized Dr. Rogers as a psychiatrist as well. (R. 20) (stating "[i]n February 2013, the claimant began treating with *Dr. Rogers, a psychiatrist*, in addition to Ms. Burke.") (emphasis added). Similarly, he observed that Ms. Burke provided therapy as a social worker. (R. 19) (stating, "[s]oon after his discharge, the claimant began a Suboxone treatment program for his narcotic addiction, and he also began treating with *Ms. Burke, a social worker*, for therapy.") (emphasis added). The ALJ was clearly aware of Dr. Rogers', Dr. Craig's and

6

Ms. Burke's status as specialists and the import that had under § 404.1527(c)(5) and § 416.927(c)(5). Consequently, Hundley's contentions are not convincing in this regard.

Hundley also urges that the ALJ did not consider the longitudinal nature of the treating relationship he had with Dr. Rogers and Ms. Burke. *See ECF Docket No.* [13], p. 16. According to Hundley, Dr. Rogers saw him on eight occasions between February 2013 and January 2014 and he presented to Ms. Burke 30 times between March of 2012 and October of 2013. *Id.* Again, I find Hundley's contention to be misplaced. The ALJ noted that Hundley began treating with Dr. Rogers in February of 2013 and acknowledges that Hundley had been seeing Ms. Burke since 2012. (R. 19-20) Moreover, he details many of the findings set forth in those office visits, including notations that Hundley's mental status exams were "normal," with "good insight and judgment" and that "Dr. Rogers noted that the claimant had made marked improvement in only a short period of time." (R. 20) Indeed, the ALJ observed that the treatment notes described Hundley as continuing to "do well over the next several months on the same medications," with an increase in GAF scores. (R. 20) The ALJ referenced a treatment note following the summer of 2013 in which "the claimant reported that his moods were stable and that he was enjoying fishing frequently as a hobby. He seemed to be in good humor and made some jokes about fishing with Dr. Rogers." (R. 20) The ALJ similarly referenced Hundley's last visits with Dr. Rogers, where Hundley complained of some increase in depression after decreasing his medication because he was running low on pills. (R. 20) The ALJ noted that Dr. Rogers recorded Hundley's GAF score as 60 and found his mental status exam to be normal. (R. 20) The ALJ also cites to Ms. Burke's treatment notes. (R. 19) Consequently, I reject Hundley's

7

contentions that the ALJ failed to misapprehend that longitudinal nature of the treating relationship provided by Dr. Rogers and Ms. Burke. As stated above, neither the regulations nor the case law require the ALJ to discuss the treating relationship via any particular language.

Hundley similarly contends that the ALJ erred in his reliance upon and reference to the GAF scores. As recognized in *Harris v. Colvin*, Civ. No. 14-4444, 2015 WL 10097520 at * 5 (E.D. Pa. Oct. 27, 2015):

> [t]he GAF scale appears to have fallen into disfavor. "Due to concerns about subjectivity in application and a lack of clarity in the symptoms to be analyzed, the [American Psychiatric Association] abandoned the GAF score in its recently published fifth edition of the Diagnostic and Statistical Manual of Mental Disorders." *Solock v. Astrue*, 2014 U.S. District LEXIS 81809, 2014 WL 2738632, at * 6 (M.D. Pa. June 17, 2014). "It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity … and questionable psychometrics in routine practice." See AM. PSYCHIATRIC ASS'N., DIAGNOSTIC AND STAT. MANUAL OF MENTAL DISORDERS, DSM-5 16 (5th ed. 2013). In response the Social Security Administration now allows ALJs to use GAF ratings as opinion evidence when assessing disability claims involving mental disorders; however, a "GAF score is never dispositive of impairment severity," and thus an ALJ should not "give controlling weight to a GAF from a treating source unless it is well supported and not inconsistent with other evidence." SSA AM 13066 at 5 (July 13, 2013).

*Harris v. Colvin*, 2015 WL 10097520 at * 5. Here, it is clear that the ALJ did not give the rising GAF scores dispositive consideration. The ALJ did note that Hundley's GAF scores had continuously increased from a low of 45 at his first appointment to a high of 60 during a January 2014 appointment. (R. 21) He concluded that the "these rising GAF scores also indicate that the claimant is improving with treatment and medication and are given some weight." (R. 21) His use of the scores as mere "opinion evidence" is entirely appropriate, contrary to Hundley's contentions.

8

Hundley also criticizes the ALJ for discounting Dr. Craig's opinion, in part, because it was based upon Hundley's subjective complaints.[2] Yet this is entirely appropriate under case law to discount portions of a physician's opinion that are based upon a claimant's subjective complaints. *See Morris v. Barnhart*, 78 Fed. Appx. 820, 825 (3d Cir. 2003); *Hernandez-Flores v. Comm'r. of Soc. Sec.*, 2015 WL 4064669 at * 4 (D. N.J. July 1, 2015) (stating that "an ALJ may discount aspects of a medical opinion that are based on the claimant's subjective symptoms, even where the claimant has alleged a psychological impairment.") and *Krueger v. Colvin*, 2015 WL 1444949 at * 4 (W.D. Pa. March 30, 2015).[3]

Finally, Hundley urges that, if the ALJ was inclined to discount Dr. Craig's opinion as outdated, he should have arranged for another consultative examination. I disagree. The decision to order a consultative examination is within the sound discretion of the ALJ. *Thompson v. Halter*, 45 Fed. Appx. 146, 149 (3d Cir. 2002); 20 C.F.R. §§ 404.1517, 416.917. An "ALJ's duty to develop the record does not require consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." *Id.* Other circumstances necessitating a consultative examination include situations where a claimant's medical records do not contain needed additional evidence, or when the ALJ needs to resolve a conflict, inconsistency or ambiguity in the record. *See* 20 C.F.R. §§ 404.1519(a), 416.919(a). Based on the existing medical records in this case, I find that the ALJ was not required to order an additional consultative examination. I find no conflicts or ambiguities in the

---

[2] I note that the ALJ clearly explained that he also placed little weight on Dr. Craig's opinion because it "was made before the claimant began treating with Dr. Rogers so it does not reflect the claimant's current functioning after a year of therapy and medication." (R. 21)

[3] I note that Hundley is not claiming to be suffering from fibromyalgia, or chronic fatigue symptom, where subjective complaints are of elevated importance.

9

medical records that would have necessitated a second consultative examination. Thus, I find no error in this regard.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANE E. HUNDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Civil Action No. 16-153 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 10th day of November, 2016, it is hereby ORDERED that the decision of the ALJ is affirmed and that Plaintiff's Motion for Summary Judgment (Docket No. 12) is denied and Defendant's Motion for Summary Judgment (Docket No. 14) is granted.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
United States Senior District Judge